OPINION
This prosecution is the end result of an incident which occurred between two Columbus police officers on January 15, 1999. The defendant, James Huffman, was charged in the Franklin County Municipal Court with one count of public indecency in violation of R.C. 2907.09. Defendant waived his right to trial by jury, and the matter was tried to the court on October 1, 1999. The defendant was found guilty, and now appeals raising the following three assignments of error:
 [I.] The trial court deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by admitting and relying upon inadmissible character evidence.
 [II.] Appellant's counsel's failure to object to extremely prejudicial character evidence that deprived appellant of a fair trial constituted ineffective assistance of counsel, and thereby deprived appellant of his rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 [III.] The trial court deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by applying a standard of proof that eliminated the presumption of innocence and relieved the prosecution of its burden of proving each and every element of the charged offense beyond a reasonable doubt.
In January 1999, defendant worked as a detective in the accident investigation unit of the Columbus Police Department. At that time, Officer Sara Rodgers, the victim and complaining witness in this case, was assigned to the department's burglary unit. Although she worked burglary at that time, she and the defendant had met approximately two years earlier when Rodgers was also assigned to accident investigation.
Since meeting, Rodgers and the defendant spoke many times about professional as well as personal matters. In her words, the defendant "would come over to my desk. There was a chair there, and he would sit down and talk to me. * * * [H]e'd call me up and say, you know, `Hey, I'm down here'; or, you know, `Come down and talk to me.' It happened a couple times a week." (Tr. 12.) Rodgers testified that the defendant was frequently complimentary, and that the two had a number of shared interests. However, although she considered the defendant a "friend," Rodgers testified that he often brought up matters of a personal nature which she considered to be inappropriate. Particularly, Rodgers explained that the defendant would often attempt to engage her in discussions of a sexual nature, including her sexual preferences and characteristics.
For example, the defendant would from time to time tell her that he would like to date her if she were single. The defendant also divulged to Rodgers that he had cheated on his wife on several different occasions, and asked her how she felt about that fact. In addition, on more than one occasion, defendant asked Rodgers what size her husband's penis was, brought up the topic of anal sex, and asked whether or not she shaved her pubic hair. According to Rodgers, she would attempt to change the topic of conversation when such matters were broached. In her own words, "He [the defendant] would bring them up, and I would not discuss them with him." (Tr. 30.) In contrast, however, the defendant testified that he and Officer Rodgers frequently and openly discussed personal matters, including matters of a sexual nature.
Toward the end of her shift on the evening of January 15, 1999, Officer Rodgers received a phone call from the defendant inviting her to join him and two other officers at his desk. It was not unusual for the two to visit in this manner, and they had met in a similar manner on previous occasions. When she arrived, Officer Rodgers seated herself with the defendant and Officers Julie Glasure and Mike Huffman[1] and joined their conversation.
At first, the conversation between the four officers consisted mainly of "small talk." However, it took on sexual overtones when Officer Glasure commented that the defendant had small feet. In response, the defendant stated, "Well, you know what that means," and gestured that the size of a man's penis is the distance between the thumb and the end of the index finger. According to Rodgers, "at that point the conversation kind of died * * *" and Officers Glasure and Huffman dispersed to go about their normal business. (Tr. 17.) Rodgers also began to leave, when the defendant whispered in her ear that he wanted to see her legs. Rodgers claims that she rebuffed this request and turned to leave. As she did so:
 A. [The defendant] stopped and he said, "Hey"; and I poked my head back so I could see around the cubicle.
* * *
 At that point, I peeked around the cubicle. His penis was out. His pants were unzipped, and his hands were down to his side.
* * *
Q. Okay. Then what happened?
 A. I was yelling at him to, you know, quit it, stop it, put it back in; and I went towards the wooden door to leave. And he laterally moved to the door; and, at that point, I turned around and went out the glass door.
Q. What do you mean by laterally moved?
 A. He — he moved to the side to — to block my way from leaving the wooden door.
Q. Did he still have his penis exposed?
 A. I wasn't quite sure at that point, because I — I had my hands covering my view at that point. I asked him — I said, you know, "Is it back in?" And he said, "Yes." And I brought my hands down, and it was still out. [Tr. 21-23.]
The defendant denied Officer Rodgers' account of the events that evening. In his testimony, the defendant recounted the conversation as follows:
Q. And what was the discussion about?
 A. Just common things at first. I think that's when Julie [Glasure] and Mike [Huffman] came over and was talking to us also. And we had a snowstorm right then, and we were talking about the weather, and it took up quite a bit of time. And then, after that — excuse me, Mike Huffman had a problem with one of the administrative things that I had done; and so we were discussing that and hashing that out a little bit.
Q. Okay. Had Officer Rodgers been there at that point?
A. Yes.
 Q. Okay. And, subsequently, Officer Glasure and Officer Rodgers left?
A. No, Officer Huffman and Officer Glasure left.
 Q. I'm sorry. And Officer Rodgers stayed, and you two had a conversation?
A. Yes.
Q. And what was that about?
 A. That probably picked up about the family. I probably picked up at that point into as a — you know, if I said, how is your husband doing or how's — because there was a period of time in there where it was casual conversation, like I said. And she also stated that we had a lot of things in common. You know, we both have dogs and property and whatever, you know, so it could have been anything. But at a particular point, I'd asked her how her husband was doing.
 Q. Okay. While Officer Glasure and the other Officer Huffman — or Officer Glasure was there, did the conversation occur about the size of a man's penis being the length of a hand?
A. No, sir.
Q. Did you do that at all?
A. No, sir.
 Q. Did the conversation center around Officer Rogers' [sic] knees?
A. No, sir.
Q. Did you ever ask that you wanted to see her knees?
A. No, sir. [Tr. 78-79.]
The defendant continued:
Q. * * * How did the conversation end that night?
 A. Oh, she was taking Saturday night off. She took the following night off, and I said, "Have a good weekend. I'll see you next week." And she says, "Okay. I'll talk to you later." That's the exact sentence that was said.
Q. * * * So you didn't come out in the hallway —
A. No, sir.
Q. — and expose yourself?
A. No, sir.
* * *
 Q. * * * Did you ever take your penis out of your pants and show it to Officer Rodgers?
A. No, sir. [Tr. 81-82.]
While the defendant denied exposing himself, he did admit to grabbing himself in front of Officer Rodgers.
 Q. Did at any time you grab yourself in front of Officer Rodgers that night?
 A. I just placed my left hand over my crotch area at one time.
Q. How did that come about?
* * *
 A. I think it was up at the front desk. Yeah, I'm pretty sure it was up at the front desk when we were talking about her problems with her husband and everything. And then, somehow, I believe — I believe what happened is, I said, so your husband still had a malfunction, you know, I mean, he still has problems, whatever. And she stated that, yeah, and we're not having anal sex; I know you were going to ask that next. And so at that point, the conversation went that way.
Q. That way meaning a sexual way?
 A. That's correct. And I'd put my left hand over my crotch like a football player, basketball player, or —
 Q. Could you stand up, please, and show the Court what you did?
 A. I just went like this. (Indicating.) I said, you're giving — I said, "You're making me hard." That's what I said.
Q. Okay. You didn't expose yourself?
A. No, sir.
 Q. Okay. And the talk at that time was a sexual talk driven by Sara or the both of you?
A. Yes, sir.
 Q. Okay. Was it uncommon for you guys to have these types of discussions?
A. No, sir. [Tr. 82-84.]
As noted, the defendant was charged with one count of public indecency in violation of R.C. 2907.09(A). That section provides in pertinent part:
 No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:
(1) Expose his or her private parts * * * [.]
In his first assignment of error, the defendant alleges that the trial court erred by admitting, and then relying upon, inadmissible character evidence. Specifically, defendant argues that three statements made during the course of Officer Rodgers' testimony should have been excluded by the court, even though defense counsel made no objection.
The first of these statements occurred when Officer Rodgers characterized the defendant as having the "type of personality that he's kind of rude and crude." (Tr. 17.) The second statement concerned Officer Rodgers' explanation of the conversation that evening, when she stated that the defendant "was acting like he has in the past." (Tr. 24.) Finally, the third statement occurred when Rodgers stated, "I was on my way out, and he just brought it up. I didn't think there was going to be this kind of, you know, situation. He — like I said, he's — he's done things like that before, that's just his personality, I suppose. And when — when that happens, I just, you know, just kind of try and wind it down." (Tr. 61.)
General evidence of an individual's character is not admissible to prove that the individual acted in conformity therewith on a particular occasion. Evid.R. 404(A); State v. Hill
(1992), 64 Ohio St.3d 313. However, evidence of other acts is admissible when it is offered for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
In this case, the challenged portions of Officer Rodgers' testimony were admissible to show the defendant's sexually oriented motive and intent. See Columbus v. Loeffler
(Aug. 31, 1989), Franklin App. No. 89AP-19, unreported. As inLoeffler, evidence of the defendant's prior suggestive comments and fixation upon sexual matters, characteristics, preferences, and requests, were offered to establish the defendant's motive and intent. Accordingly, the challenged testimony is admissible under Evid.R. 404(B). Thus, the admission of the testimony does not amount to plain error. Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant argues that he received ineffective assistance of trial counsel. Specifically, defendant argues that trial counsel failed to object to the three instances of "inadmissible" character evidence given by Officer Rodgers.
In order to demonstrate that he has been denied the effective assistance of trial counsel, defendant must first show that counsel's performance was deficient. State v. Bradley
(1989), 42 Ohio St.3d 136. As noted by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, this requires being able to show that trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, defendant must show that counsel's performance caused him harm. In order to demonstrate harm, defendant must show that there "exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, paragraph two of the syllabus. However, because we find that the admission of the defendant's prior acts was not in error, defendant is not able to show that his counsel was ineffective for failing to lodge an objection. Therefore, defendant's second assignment of error is also overruled.
Finally, in the third assignment of error, defendant argues that the trial court's statement during the defendant's closing argument, "[t]hat cuts both ways, doesn't it, Counsel?" demonstrates that the court eliminated the presumption of innocence and, instead, imposed upon the defendant a burden to prove his innocence. The defendant relies upon the following portion of the closing argument in support of his assertion:
 [By defense counsel:] I do not believe the State, Your Honor, has proved beyond a reasonable doubt or met their burden in any way, shape, or form. There's ways to verify this, Your Honor. There's other people to get. There's — the — Ms. Rodgers comes in and makes these allegations about conversations that were had in this cubicle. Where's the other people? I mean, she —
 [By the court:] That cuts both ways, doesn't it, Counsel? [Tr. 96.]
We have reviewed the record, and while we agree that the presumption of innocence is not to be infringed, we believe that the defendant's contention is without merit. We find no indication that the trial court failed to require the state to prove each element of the charged offense beyond a reasonable doubt. Accordingly, defendant's third assignment of error is also overruled.
Having overruled all three assignments of error, we hereby affirm the judgment of the Franklin County Municipal Court.
[1] Officer Mike Huffman is of no relation to the defendant.